UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FESTUS SAMAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-10158-JEK |
| | ) |
| TAKEDA PHARMACEUTICALS U.S.A., INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS

**KOBICK, J.**

Plaintiff Festus Samah brings this action against his former employer, defendant Takeda Pharmaceuticals U.S.A., Inc., alleging that it violated state and federal laws by discriminating against him based on his race and sex, subjecting him to a hostile work environment, failing to properly pay him for time worked, and retaliating against him for complaining about these violations. Pending before the Court is Takeda's partial motion to dismiss eleven of Samah's fifteen claims. For the reasons that follow, the motion will be granted in part and denied in part.

The claims of sex discrimination under Title VII and M.G.L. c. 151B will be dismissed for failure to exhaust administrative remedies. The portion of his Title VII claim asserting retaliation based on his reporting of sex-based discrimination will be dismissed for the same reason. Samah's remaining claims survive dismissal. The Title VII and Chapter 151B claims are timely because Samah plausibly alleges that Takeda constructively discharged him. He also adequately pleads that Takeda discriminated against him on the basis of race and subjected him to a racially hostile work

environment. And he sufficiently states claims of retaliation under the Fair Labor Standards Act, the Massachusetts Wage Act, and the Massachusetts Earned Sick Time Law.

## BACKGROUND

The following facts are recounted based on the allegations in the amended complaint and documents attached to, or sufficiently referenced in, that pleading. *Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76, 81 (1st Cir. 2025).

Samah was employed by Takeda as a research associate from August 2022 until July 2023. ECF 14, ¶¶ 3, 6, 13, 54. Takeda is an international biopharmaceutical company that operates two laboratories in Cambridge, Massachusetts, where Samah worked. *Id.* ¶¶ 5, 17. He was the only Black person on his team and believed that his coworkers and supervisor, Shylah Wyllie, treated him differently because of his race. *Id.* ¶¶ 12, 14, 22, 28. Samah was, for example, "assigned jobs that a researcher of lower designation would ordinarily do" and "undesirable tasks like mopping and sweeping." *Id.* ¶¶ 25-26, 65. One colleague was also "particularly cruel and would continuously bully and intimidate him" because of his race. *Id.* ¶¶ 27-28, 65, 69. Samah reported to Wyllie that he felt "discriminated against and bullied," but his complaints went unaddressed. *Id.* ¶¶ 22, 29, 65.

In February 2023, Samah requested two weeks off because "he was experiencing mental anguish" from "his colleagues' and supervisor's treatment" and wanted to care for his then-pregnant wife, who had recently been hospitalized. *Id.* ¶ 30. Right after this request, Wyllie emailed a member of the human resources team that Samah's choice to take available sick leave gave rise to concerns about his performance. *Id.* ¶ 31. When he returned from the two weeks off in March 2023, Takeda placed him on a coaching plan. *Id.* ¶ 34. In June 2023, Samah received an $1,800 bonus, while his white colleagues received $5,000 bonuses. *Id.* ¶ 41. Takeda did not explain this

2

disparity. *Id.* ¶ 42. Around the same time, in June 2023, Samah "also complained about not being paid for his travel time and for the time he was entitled to for weekend and holiday shifts." *Id.* ¶ 43. Samah estimates that he was underpaid by at least two hours every weekend because Takeda paid him only for lab work, not his "time spent preparing the testing area, preparing the systems to record data, [or] traveling between" laboratories. *Id.* ¶¶ 20-21.

On June 7, 2023, Samah requested Massachusetts Paid Family and Medical Leave ("PFML") time, to start in October 2023, in anticipation of his child's birth. *Id.* ¶ 44. Takeda placed Samah on a 60-day performance improvement plan ("PIP") less than three weeks later, on June 26, 2023. *Id.* ¶ 46. On July 6, 2023, Takeda offered him the option to either separate from the company or continue working under the PIP. *Id.* ¶¶ 48-49. Samah was told "that nothing would change"; among other things, "his co-workers and supervisors would continue to force him to complete undesirable tasks and treat him differently than his white co-workers" and "his lawful use of time off and leave would continue to be unfairly scrutinized." *Id.* ¶ 51. Samah chose to separate instead of enduring these "intolerable" working conditions where, he alleges, he was consistently treated differently and retaliated against. *Id.* ¶¶ 51-53. On July 17, 2023, he received a separation agreement from Takeda with an official separation date of July 19, 2023. *Id.* ¶ 54.

Samah co-filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and Equal Employment Opportunity Commission ("EEOC") on May 3, 2024. *Id.* ¶ 56; *see* ECF 18-1. He withdrew his charge with MCAD in October 2024 and received his right to sue notice from EEOC in March 2025. ECF 14, ¶ 58. He then initiated this action in January 2025 and filed an amended complaint in March 2025. ECF 1, 14. Samah asserts claims for retaliation in violation of M.G.L. c. 175M, § 9 (Count 1); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) (Count 4); the Massachusetts Fair Employment Practices Act,

M.G.L. c. 151B, § 4(4) (Count 8); the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3) (Count 11); the Massachusetts Wage Act, M.G.L. c. 149, § 148A (Count 13), and the Massachusetts Earned Sick Time Law, M.G.L. c. 149, § 148C(h) (Count 15). ECF 14, ¶¶ 61, 64, 68, 71, 73, 75. He alleges that Takeda violated Title VII and Chapter 151B by discriminating against him on the basis of his race (Counts 2 and 6, respectively) and sex (Counts 3 and 7, respectively). *Id.* ¶¶ 62-63, 66-67. He asserts that Takeda subjected him to a hostile work environment in violation of Title VII and Chapter 151B (Counts 5 and 9, respectively). *Id.* ¶¶ 65, 69. And he claims that Takeda failed to pay him properly in violation of the FLSA (Count 10), the Massachusetts Wage Act (Count 12), and M.G.L. c. 151, § 1 (Count 14). *Id.* ¶¶ 70, 72, 74.

Takeda moved to dismiss Counts 2 through 9, 11, 13, and 15. ECF 17. After Samah opposed that motion and Takeda filed its reply, the Court held a hearing and took the motion under advisement. ECF 21, 25, 28.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Dismissal of a claim based on a statute of limitations defense is appropriate only "when the pleader's allegations 'leave

4

no doubt that an asserted claim is time-barred.'" *Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir. 2010) (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)).

## DISCUSSION

### I.     Timeliness of the Title VII and Chapter 151B Claims.

Counts 2 through 9 assert claims of race and sex discrimination, hostile work environment, and retaliation in violation of Title VII and Chapter 151B. The parties agree that because Samah co-filed his charge of discrimination with the MCAD and EEOC on May 3, 2024, those claims are limited to conduct that occurred within 300 days before—that is, on or after July 8, 2023. S*ee* 42 U.S.C. § 2000e-5(e)(1) (setting 300-day statute of limitations period); M.G.L. c. 151B, § 5 (same). Takeda contends that these claims are time-barred because, in its view, the final allegedly discriminatory act took place on June 26, 2023, when Samah was placed on the 60-day PIP. Samah counters that his discrete-action claims are timely because he was constructively discharged within the 300-day limitations period, as he received a separation agreement from Takeda on July 17, 2023 with an official separation date of July 19, 2023. He also contends that the circumstances surrounding the constructive discharge were among the acts that contributed to the hostile work environment and therefore render his hostile work environment claims timely.

"The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)). Because "a constructive-discharge claim necessarily includes the employee's resignation," the statute of limitations period for such a claim under Title VII "begins running only after the employee resigns." *Id.* at 550, 554. The amended complaint does not specify

5

precisely when Samah resigned. It alleges that Samah chose to separate from Takeda after being given the option on July 6, 2023 to either part ways or continue working under a 60-day PIP, and that he received the separation agreement from Takeda on July 17, 2023, with an official separation date of July 19, 2023. ECF 14, ¶¶ 48-49, 53-54. Had Samah resigned on July 6, 2023, the 300-day clock would have begun running that day and ended on May 1, 2024, two days before he filed his charge of discrimination. If he resigned on or after July 8, 2023, however, his Title VII and Chapter 151B claims would be timely. Because the date of Samah's resignation is not "clear 'on the face of the plaintiff's pleadings,'" and because the Court must draw all inferences in Samah's favor at this stage in the proceedings, his claims under Title VII and Chapter 151B will not be dismissed as untimely on this ground. *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001) (quoting *Aldahonda-Rivera v. Parke Davis & Co.*, 882 F.2d 590, 591 (1st Cir. 1989)).

Turning to the merits, to sustain his constructive discharge theory under Title VII and Chapter 151B, Samah must plausibly allege "'that (1) 'a reasonable person in [his] position would have felt compelled to resign' and (2) '[he] actually resigned.'" *Vélez-Ramírez v. P.R. through Sec'y of Justice*, 827 F.3d 154, 158 (1st Cir. 2016) (quoting *Green*, 578 U.S. at 555). There is no dispute that Samah actually resigned from Takeda. Thus, the relevant inquiry is whether he adequately alleges that, as an objective matter, his working conditions "had become so onerous, abusive, or unpleasant that a reasonable person in [his] position would have felt compelled to resign." *Cherkaoui v. City of Quincy*, 877 F.3d 14, 29-30 (1st Cir. 2017) (quotation marks omitted); *see GTE Prods. Corp. v. Stewart*, 421 Mass. 22, 34 (1995) ("The test is met if, based on an *objective* assessment of the conditions under which the employee has asserted he was expected to work, it could be found they were so difficult as to be intolerable."). Samah cannot merely allege that he

6

suffered the "ordinary slings and arrows that workers routinely encounter in a hard, cold world." *Stratton v. Bentley Univ.*, 113 F.4th 25, 40 (1st Cir. 2024) (quotation marks omitted).

While the amended complaint does not use the term "constructive discharge" and instead refers to Samah's "separation" and "termination," it clearly seeks to invoke the constructive discharge doctrine. Samah alleges that he "had no choice but to separate" from Takeda when "[f]aced with the decision to either continue working in such intolerable conditions or separate from his employment." ECF 14, ¶¶ 53-54. He also alleges sufficient facts to infer, at the pleading stage, that he was constructively discharged by Takeda. According to the amended complaint, Samah's "colleagues and supervisor gave him tasks that other members of the team did not want to do and treated him differently and unequally," in his view, "because he is Black." *Id.* ¶¶ 23, 28. As "the only Black individual in his team," he "was assigned jobs that a researcher of lower designation would ordinarily do" and "undesirable tasks like mopping and sweeping." *Id.* ¶¶ 14, 25-26. One of his coworkers "was particularly cruel and would continuously bully and intimidate him," allegedly "because of his race." *Id.* ¶¶ 27, 65, 69. And his supervisor did nothing when he reported "that he felt he was being discriminated against and bullied." *Id.* ¶ 29. Nor did Takeda address his complaints "about not being paid for his travel time and for the time he was entitled to for weekend and holiday shifts." *Id.* ¶ 43.

Accepted as true, these allegations reflect treatment beyond the "ordinary slings and arrows that workers routinely encounter in a hard, cold world." *Stratton*, 113 F.4th at 40 (quotation marks omitted). Samah pleads more than just a "single, isolated act of an employer" or "mere dissatisfaction with the nature of assignments . . . and dissatisfaction with compensation." *GTE Prods. Corp.*, 421 Mass. at 34-35. He alleges a continuous pattern of race-based mistreatment that included assignment of tasks beneath his job title and repeated bullying by a coworker. Takeda

7

may be held liable for such behavior because Samah reported that coworker's conduct to his supervisor. *See* ECF 14, ¶¶ 22, 27, 29; *Caruso v. Delta Air Lines, Inc.*, 113 F.4th 56, 71 (1st Cir. 2024) (Title VII employer liability where "co-worker harassment . . . occurred or continued after the employer knew or should have known it was occurring"); *accord City of Springfield v. United Pub. Serv. Emps. Union*, 89 Mass. App. Ct. 255, 261 (2016). The Title VII and Chapter 151B claims asserted in Counts 2 through 9 will not, accordingly, be dismissed as untimely.

## II.     Sex Discrimination and Retaliation Claims.

Counts 3 and 7 assert that Takeda discriminated against Samah on the basis of sex in violation of Title VII and Chapter 151B, respectively. Takeda argues that these claims must be dismissed for lack of exhaustion. "Both Title VII and Chapter 151B require an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996) (citing 42 U.S.C. § 2000e-5(f); M.G.L. c. 151B, §§ 5-9). This exhaustion requirement "serves to 'provide the employer with prompt notice of the claim and to create an opportunity for early conciliation.'" *Rodriguez v. United States*, 852 F.3d 67, 78 (1st Cir. 2017) (quoting *Fantini v. Salem State Coll.*, 557 F.3d 22, 26 (1st Cir. 2009)); *accord Everett v. 357 Corp.*, 453 Mass. 585, 600 (2009). Consistent with that purpose, "the scope of a civil action is not determined by the specific language of the charge filed with the agency, but rather, may encompass acts of discrimination which the [EEOC or] MCAD investigation could reasonably be expected to uncover." *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31-32 (1st Cir. 2009) (quotation marks omitted); *accord Oliveras-Villafañe v. Baxter Healthcare SA*, 140 F.4th 29, 33 (1st Cir. 2025).

Samah's charge of discrimination, which the amended complaint incorporates by reference, alleges that Takeda discriminated against him "on the basis of Race and Retaliation" in violation

of Title VII and Chapter 151B. ECF 18-1, at 4; *see* ECF 14, ¶ 56. The charge identifies race discrimination, a racially hostile work environment, and retaliation for requesting PFML leave. *See* ECF 18-1, at 15-19. Noticeably absent from the charge is any factual allegation or claim of sex discrimination. That omission distinguishes this case from *Fantini v. Salem State College*, upon which Samah relies. In that case, the First Circuit concluded that the plaintiff's charge of discrimination "sufficiently provided the Defendants with prompt notice of the claims against them, including the gender discrimination claims under Title VII," because the charge "described an alleged incident of disparate treatment involving her and [a] male employee" and "stated that she believed her termination, while she was on sick leave, was a pretext for gender discrimination." *Fantini*, 557 F.3d at 27-28. Here, by contrast, nothing in Samah's charge could have placed Takeda on notice about his current theory of sex discrimination.

The charge's statements highlighted in his opposition brief fail to "'describe the essential nature of'" his sex-based claims or "'identify the core facts on which'" those claims rest. *Windross v. Vill. Auto. Grp., Inc.*, 71 Mass. App. Ct. 861, 865 (2008) (quoting *Lattimore*, 99 F.3d at 464). The only reference to sex in the entire 64-paragraph charge is a single sentence, which states that "a colleague told [Samah] that part of the issue with [his paternity] leave request was that [he] would have gone on leave soon after another female employee returned from her leave, and that created an issue at Takeda." ECF 18-1, at 13, ¶ 24. But neither that sentence, specifically, nor the charge, generally, alleges that Samah was treated differently because he is male. *See O'Horo v. Bos. Med. Ctr. Corp.*, 131 F.4th 1, 12 (1st Cir. 2025) (detailing requirements for sex-based disparate-treatment claims under Title VII and Chapter 151B). And an investigation by the EEOC or MCAD would not reasonably have been expected to uncover sex-based discrimination, where Samah did not expressly or even implicitly allege it. *See Rodriguez*, 852 F.3d at 79-82 (affirming

9

dismissal of disparate treatment claim where plaintiffs alleged only disparate impact in their charge); *Castro v. United States*, 775 F.2d 399, 403 n.2 (1st Cir. 1985) (rejecting argument that the agency "should have known that [plaintiff] was alleging discrimination on the basis of national origin by the fact that he is Puerto Rican and by the fact that he alleged discrimination on the basis of age" as "contrary to both logic and law"). Counts 3 and 7 will, therefore, be dismissed without prejudice for failure to exhaust administrative remedies.

Relatedly, Count 4 asserts that Takeda violated Title VII by retaliating against Samah "for reporting that his co-workers were subjecting him to . . . race- and sex-based discrimination and [a] hostile environment." ECF 14, ¶ 64. The portion of this claim concerning his reports of "sex-based discrimination" will, for the same reason, be dismissed without prejudice as well.

### III.  Racial Discrimination Claims.

Counts 2 and 6 allege that Takeda discriminated against Samah based on his race in violation of Title VII and Chapter 151B, respectively. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Chapter 151B similarly makes it unlawful for an employer "to discharge from employment [an] individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" "because of the race" of that individual. M.G.L. c. 151B, § 4(1). While the plaintiff "need not plead facts sufficient to establish a prima facie case" at the pleading stage, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Rodríguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013). Those elements are that "(1) the plaintiff must be a member of a protected class; (2) [he] must be qualified for [his] job; (3) [he] must suffer an adverse employment

action at the hands of [his] employer; and (4) there must be some evidence of a causal connection between [his] membership in a protected class and the adverse employment action." *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 70 (1st Cir. 2011); *see Trs. of Health & Hosps. of City of Bos., Inc. v. Massachusetts Comm'n Against Discrimination*, 449 Mass. 675, 686 (2007) ("The four elements of the complainants' proof are (1) membership in a protected class; (2) harm; (3) discriminatory animus; and (4) causation.").

Samah plausibly alleges that he was discriminated against by Takeda based on his race. According to the complaint, Samah "was the only Black individual in his team at" Takeda, and he had prior experience and performed satisfactorily as a lead technician. ECF 14, ¶¶ 14-16. His coworkers and supervisor assigned "him tasks that other members of the team did not want to do," including "jobs that a researcher of lower designation would ordinarily do" and "undesirable tasks like mopping and sweeping," simply "because he is Black." *Id.* ¶¶ 23, 25-26. And Takeda allegedly "questioned [his] performance and treated him differently than his white co-workers," then placed him on a coaching plan, PIP, and eventually constructively discharged him in part because of his race. *Id.* ¶¶ 62, 66. These allegations are sufficient to state claims of race discrimination under Title VII and Chapter 151B. *See Thompson v. Coca-Cola Co.*, 522 F.3d 168, 176 (1st Cir. 2008) (plaintiff made out prima facie race discrimination claim under Chapter 151B where, as an African-American, he was a member of a protected class and claimed to have been fired because of his Jamaican origin and his coworker's "numerous discriminatory comments about Jamaicans").

IV.     **Hostile Work Environment Claims.**

Counts 5 and 9 assert that Takeda violated Title VII and Chapter 151B, respectively, by subjecting Samah to a racially hostile work environment. "'When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

11

conditions of the victim's employment and create an abusive working environment, Title VII is violated.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Title VII is also violated when harassment is "so unbearable that [the employee is] forced to resign and [is] thus constructively discharged." *Lee-Crespo v. Schering-Plough Del Caribe Inc.*, 354 F.3d 34, 45 (1st Cir. 2003); see *Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 44 (1st Cir. 2003) (hostile work environment claim does not "requir[e] that the plaintiff be actually or constructively discharged"). To sustain his Title VII hostile work environment claim, Samah must plead "offensive, race-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by [him] as abusive." *Landrau-Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 613 (1st Cir. 2000). Likewise, the Supreme Judicial Court has interpreted Section 4(1) of Chapter 151B "to provide a cause of action for a hostile work environment based on the cumulative effect of a series of abusive acts though each in isolation might not be actionable in itself." *Windross*, 71 Mass. App. Ct. at 863 (citing *Clifton v. Massachusetts Bay Transp. Auth.*, 445 Mass. 611, 616 n.5 (2005)). To state such a claim, Samah must allege that Takeda was "'pervaded by harassment or abuse,'" such that "'the resulting intimidation, humiliation, and stigmatization'" posed "'a formidable barrier to the full participation of an individual in the workplace.'" *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 532 (2001) (quoting *College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162 (1987)).

Samah sufficiently alleges that Takeda subjected him to a hostile work environment, where he was "bullied and harassed because of his race." ECF 14, ¶¶ 65, 69. This is so for the same reasons, and based on the same allegations, that his constructive discharge claims survived dismissal. The Supreme Court has recognized that "a hostile-work-environment claim is a 'lesser

included component' of the '*graver* claim of hostile-environment constructive discharge.'" *Green*, 578 U.S. at 559 (quoting *Suders*, 542 U.S. at 149); *accord O'Horo*, 131 F.4th at 22. In other words, to sustain a constructive discharge claim, a plaintiff must allege "harassment at least as severe (if not more) than that required for a hostile work environment claim." *Reyes v. Garland*, 26 F.4th 516, 522 (1st Cir. 2022) (quotation marks omitted). Because Samah has, as explained, plausibly alleged constructive discharge, he also states claims of a racially hostile work environment under Title VII and Chapter 151B. Takeda's motion to dismiss those claims will, accordingly, be denied.

### V. FLSA and Wage Act Retaliation Claims.

Counts 11 and 13 assert claims of retaliation in violation of the FLSA and the Massachusetts Wage Act, respectively. The FLSA prohibits employers from retaliating "against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). The Wage Act similarly provides that "[n]o employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this" Act. M.G.L. c. 149, § 148A. It also states that "[a]ny employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint . . . or has instituted . . . any proceeding . . . shall have violated this section." *Id.* To establish a prime facie claim under either statute, Samah must show that (1) he "engaged in statutorily protected activity" and (2) Takeda "afterward took adverse employment action against" him (3) "as reprisal for having engaged in the protected activity." *Marcus v. Am. Cont. Bridge League*, 80 F.4th 33, 45 (1st Cir. 2023) (quotation marks omitted); *accord Smith v. Winter Place LLC*, 447 Mass. 363, 367-68 (2006); *see Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 531 (1st Cir. 2015) (discussing both statutes). But again, at the motion to dismiss stage, he "need not plead facts

13

sufficient to establish a prima facie case"; instead, he must allege "enough facts to make entitlement to relief plausible in light of" those three elements. *Rodríguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278, 286 (1st Cir. 2014) (quotation marks omitted).

Samah plausibly alleges that Takeda "retaliated against [him] for reporting that he was not being paid properly." ECF 14, ¶¶ 71, 73. According to the amended complaint, he engaged in protected activity in June 2023 by "complain[ing] about not being paid for his travel time and for the time he was entitled to for weekend and holiday shifts." *Id.* ¶ 43. He also complained about not being "provided the bonus he was entitled to" in June 2023. *Id.* ¶¶ 41-42. At this stage in the case, these allegations adequately suggest that Samah's wage-related complaints were "sufficiently clear and detailed" such that "a reasonable, objective person would have understood [him] to have put [Takeda] on notice that [he was] asserting statutory rights." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) (quotation marks and brackets omitted). Takeda then placed Samah on a 60-day PIP that same month and allegedly forced him to separate a few weeks later. *Id.* ¶¶ 46, 48, 53-54. This close temporal proximity is sufficient to plausibly infer a causal link between his complaints and the PIP, followed by his subsequent separation from Takeda. *See Marcus*, 80 F.4th at 45. Taken together, Samah's allegations adequately state claims of retaliation under the FLSA and the Wage Act. *Compare Chagnon v. Truefort, Inc.*, No. 24-cv-11638-WGY, 2025 WL 915698, at *6 (D. Mass. Mar. 25, 2025) (denying motion to dismiss Wage Act retaliation claim where employee was allegedly fired "shortly after he complained repeatedly to the Defendants and to his supervisor about a wage to which he believed he was legally entitled"), *with Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 (1st Cir. 2010) (affirming dismissal of FLSA retaliation claim where plaintiff "did not allege that he engaged in protected activity" and "had no claim under the FLSA's wage and hours provisions").

14

## VI.     Earned Sick Time Law Retaliation Claim.

Count 15 alleges that Takeda retaliated against Samah for using his earned sick time in violation of the Massachusetts Earned Sick Time Law. This statute prohibits employers from "using the taking of earned sick time . . . as a negative factor in any employment action such as evaluation, promotion, disciplinary action or termination, or otherwise subjecting an employee to discipline for the use of earned sick time." M.G.L. c. 149, § 148C(h). Stated differently, it provides that all covered employees "'may use their earned sick time without fear of adverse consequences.'" *Lin v. CGIT Sys., Inc.*, No. 20-cv-11051-JGD, 2023 WL 12023463, at *17 (D. Mass. Sept. 29, 2023) (quoting *Lab. Rels. Div. of Constr. Indus. of Massachusetts v. Healey*, No. 15-cv-10116-RWZ, 2015 WL 4508646, at *2 (D. Mass. July 9, 2015)).

Samah allegedly "requested two weeks off" in February 2023, when "he was experiencing mental anguish because of his colleagues' and supervisor's treatment" of him and had concerns about the health of his wife, who "was pregnant and had been in the hospital frequently." ECF 14, ¶ 30. While this particular allegation does not specify that he requested or took earned sick leave, the complaint later alleges that Samah "exercised his lawful right to use his earned sick time." *Id.* ¶ 75. His supervisor, Wyllie, also confirmed in a March 27, 2023 email attached to the complaint that Samah "asked for last Thursday to leave early for his wife's OB/GYN appt" and "called out sick on Friday because he said he had been at the hospital all night with his wife." ECF 14, Ex. 2, at 22; *see* ECF 14, ¶ 36.

The complaint further alleges that Samah suffered negative consequences from taking sick leave. For example, "right after [his February 2023] request for the time off," Wyllie wrote to a member of human resources that Samah "was not performing at the level he should be" and that his "taking leave raised concerns regarding performance—even though [he] had sick/vacation time

15

available to be used." ECF 14, ¶ 31. Upon his return from leave in March 2023, Samah was placed on a coaching plan. *Id.* ¶ 34. Wyllie also "continued to complain about [his] use of sick/vacation time" and "express[ed] concerns about [his] performance again" in May 2023. *Id.* ¶¶ 38, 40. Samah later received a much smaller bonus than his coworkers in June 2023. *Id.* ¶ 41. Read together, these allegations support his claim that Takeda violated the Earned Sick Time Law by using his taking of earned sick time "as a negative factor in employment decisions and/or disciplining him for using his earned sick time." *Id.* ¶ 75. Takeda's motion to dismiss Count 15 will therefore be denied.

## CONCLUSION AND ORDER

For the foregoing reasons, Takeda's partial motion to dismiss, ECF 17, is GRANTED in part and DENIED in part. Counts 3 and 7, alleging sex discrimination, are DISMISSED without prejudice. The portion of Count 4 asserting sex-based Title VII retaliation is also DISMISSED without prejudice. The other Counts survive.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: January 8, 2026                           UNITED STATES DISTRICT JUDGE